## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| AMERICAN HEALTHNET, INC., a Nebraska corporation, | ) ) ) | CASE NO. 8:04CV0009 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | MEMORANDUM AND ORDER |
| WESTSIDE COMMUNITY HOSPITAL, INC., d/b/a SACRED HEART HOSPITAL, an Illinois corporation, | ) ) ) ) | |
| Defendant. | ) ) ) | |
| WESTSIDE COMMUNITY HOSPITAL, INC., d/b/a SACRED HEART HOSPITAL, an Illinois corporation, | ) ) ) ) | CASE NO. 4:04CV3210 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | MEMORANDUM AND ORDER |
| AMERICAN HEALTHNET, INC., a Nebraska corporation, | ) ) ) | |
| Defendant. | ) | |

This matter is before the Court in these consolidated cases on American Healthnet, Inc.'s Motion for Partial Summary Judgment. (Case No. 8:04cv9, Filing No. 116; Case No. 4:04cv3210, Filing No. 59). The matter has been fully briefed, and the Court has considered the evidence submitted. For the reasons stated below, the Court will deny the motion.

## FACTS

The following facts are undisputed. American Healthnet, Inc. ("AHN") is a Nebraska corporation with its principal place of business in Douglas County, Nebraska. (Case No. 8:04cv9, Filing No. 1 ("Complaint") ¶ 1; Filing No. 102 ("Answer") ¶ 1). Westside

Community Hospital d/b/a Sacred Heart Hospital ("Sacred Heart") is an Illinois corporation, with its principal place of business in Illinois. (Case No. 8:04cv9, Complaint ¶ 2; Answer ¶ 2).

Sacred Heart, through an agent, contacted AHN in Omaha, Nebraska, regarding Sacred Heart's computer software needs. (8:04cv9, Filing No. 13 at 6-8 ("Drelicharz Aff.") ¶ 2). Through the agent, Sacred Heart submitted a Request for Proposal ("RFP") to AHN. (8:04cv9, Filing No. 7, Ex. A ("Lorgeree Aff.") ¶ 13). Sacred Heart's agent received, in Illinois, AHN's written response to the RFP ("Response"), which was dated December 13, 2001. (*Id.*). On March 4 and 5, 2002, several Sacred Heart representatives traveled to Omaha, Nebraska, in order to evaluated AHN's Response. (8:04cv9, Filing No. 13 at 3-5 ("Thornton Aff.") ¶ 9). Sacred Heart faxed a signed copy of a Software License Agreement with Addendum and Software Support Agreement with Addendum (collectively "the Agreements") to AHN in Nebraska on April 11, 2002. (Thornton Aff. ¶ 11). AHN signed the Agreements in Nebraska on April 16, 2002. (*Id.*). On or about April 16, 2002, AHN and Sacred Heart executed the Agreements. (8:04cv9, Complaint ¶ 3; Answer ¶ 3).

The Software License Agreement contains the following provisions:

9.4 AHN represents that Licensed Software shall provide functionality equivalent to that indicated in current AHN user guides and in accordance with the RFP (Section 3 Business Functions) which will be an attachment to the contract. AHN MAKES NO OTHER REPRESENTATIONS OR WARRANTIES, EITHER EXPRESS OR IMPLIED, WITH RESPECT TO LICENSED SOFTWARE, ITS MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE. All other risk as to quality and performance of Licensed Software is with Licensee.

10.8 ENTIRE AGREEMENT This Agreement constitutes the entire agreement between the parties relating to Licensed Software, and supersedes all other proposals or prior agreements, oral or written, and all other communication between the parties relating to the subject matter of

2

this Agreement. This Agreement may be modified or supplemented only by a written document signed by both parties.

(8:04cv9, Complaint, Ex. A ("Software License Agreement") at 3).  The Addendum to

the Software License Agreement contains the following provisions:

> 9.1 Except as provided herein, Licensed Software is furnished by AHN solely on an "AS IS" basis.

> 9.5 AHN shall have no liability or responsibility to Licensee with respect to any loss, damage or expense caused directly or indirectly by the use of the Licensed Software in the trade or business of Licensee. AHN SHALL NOT BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY NATURE WITH RESPECT TO ANY LOSS, DAMAGE OR EXPENSE CAUSED EXCLUSIVELY BY LICENSEE NEGLIGENCE. AHN's sole liability for failure to provide functionality indicated in Section 9.4 shall be to modify the software at AHN's expense, to provide the represented functionality.

(*Id.* at Addendum at 2).  The Software Support Agreement contains the following

provisions:

> 10. LIMITATION OF LIABILITY. AHN shall not be liable to anyone for failure to fulfill its obligations hereunder due to causes beyond its control. Any liability of AHN for any loss, damage, or cost hereunder shall be limited to actual damages incurred by Customer, but in no event shall the aggregate of liability exceed the annual maintenance fee(s) paid by Customer for the current term nor shall any amount of the liability include any consequential damages which may be suffered by Customer.

> 11. ENTIRE AGREEMENT. All parties to this Agreement acknowledge that each has read this Agreement, understands it and agrees to be bound by its terms. All parties to this Agreement further agree that this Agreement is the complete and exclusive statement of the Agreement between the parties and supersedes all proposals, oral or written, and all other communications between the parties relating to the subject matter of this Agreement. This Agreement is not subject to modification except by an agreement in writing signed by all parties hereto.

(8:04cv9, Complaint, Ex. A ("Software Support Agreement") at 3).

On June 5, 2002, AHN and Sacred Heart executed a document entitled "Payment

Exhibit" that modified the Agreements.   (8:04cv9, Complaint ¶ 3; Answer ¶ 3).

3

Sacred Heart was directed to make payment for software and services to AHN in Omaha, Nebraska.  (Drelicharz Aff. ¶ 13).  AHN began implementing AHN software at Sacred Heart.   Disputes arose between AHN and Sacred Heart relating to payment, the functionality or quality of the software, and alleged misrepresentations regarding the software.   On December 9, 2003, AHN filed a Complaint against Sacred Heart in the District Court of Douglas County, Nebraska, alleging breach of contract.  (8:04cv9, Filing No. 1).  On January 7, 2004, Sacred Heart removed AHN's action to this Court.  (*Id.*).  Sacred Heart filed a Complaint against AHN in the United States District Court for the Northern District of Illinois, on December 30, 2003, alleging causes of action arising out of the Agreements.  (4:04cv3210, Filing No. 1).  The Illinois proceeding was transferred to this Court and consolidated with AHN's action.  (4:04cv3210, Filing Nos. 11 and 17; 8:04cv9, Filing No. 39).

AHN claims that the responses it provided to Sacred Heart in the RFP were based on AHN's Clarus product.  (8:04cv9, Filing No. 117 ("Support Brief") at 19; 4:04cv3210, Filing No. 60 ("Support Brief") at 19).  Sacred Heart admits that it knew that AHN's Clarus product was in the development stage and not a complete product at the time the parties entered into the Agreements.  (8:04cv9, Filing No. 118, Ex. H ("Payawal Depo.") 26:21-27:3; Ex. I ("Lorgeree Depo.") 54:19-55:20).  Sacred Heart representatives were concerned that Clarus was only in the development stage.  (8:04cv9, Filing No. 118, Ex. J ("Rienton Depo.") 60:14-63:9).  AHN's Version 4.0 product was fully developed and was the product AHN installed at Sacred Heart.  (8:04cv9, Filing No. 124, Ex. A ("Drelicharz Depo.") at 294:17-20).  Sacred Heart claims that the software provided by AHN failed to provide the

functionality that Sacred Heart requested and that the Agreements required.  (8:04cv3210, Filing No. 1 ("Complaint") ¶ 1).

AHN filed a Motion for Partial Summary Judgment, arguing that "AHN is entitled to summary judgment on Sacred Heart's fraudulent inducement, negligent misrepresentation, and deceptive trade practices claims and portions of the remaining allegations of Sacred Heart's Complaint and Amended Counterclaim." (Support Brief at 3).  In Case No. 8:04cv9, AHN states that the following portions of Sacred Heart's Answer, Affirmative Defenses and Amended Counterclaim (Filing No. 102) are affected by AHN's Motion: 1) Second Affirmative Defense alleging Fraudulent Inducement; 2) Count I: Fraud in the Inducement; 3) Count II: Breach of Contract ¶¶ 31, 32, 34, 35, and prayer for relief; 4) Count III: Negligent Misrepresentation; 5) Count IV: Unjust Enrichment ¶¶ 45, 47, and prayer for relief; and 6) Count V: Deceptive Trade Practices.  (Support Brief at 3-4).  AHN further states that in Case No. 4:04cv3210, the following portions of the Complaint (Filing No. 1) are affected by AHN's motion: 1) Count I: Fraud in the Inducement; 2) Count II: Breach of Contract ¶¶ 30, 31, 33, 34, and prayer for relief; 3) Count III: Unjust Enrichment ¶¶ 38, 40, and prayer for relief; and Count IV: Deceptive Trade Practices.  (Support Brief at 4).

## STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 (8th Cir. 2003).  The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

5

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).   The proponent need not, however, negate the opponent's claims or defenses.   *Id.* at 324-25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).   A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts."   *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).   "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."   *Id.* at 249-50 (citations omitted).

## DISCUSSION

Because this matter is before the Court on diversity jurisdiction, the Court will apply the substantive law of the forum.   *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).   Nebraska follows the Restatement (Second) of Conflict of Laws in deciding choice-of-law questions.   *DCS Sanitation Management, Inc. v. Castillo*, 435 F.3d 892, 895 (8th Cir. 2006).   "Section 148(2) provides guidance for fraud claims, stating that in making choice of law decisions, a district court should consider the following: (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place

6

where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant. ... ." *Inacom Corp. v. Sears, Roebuck and Co.*, 254 F.3d 683, 688 (8th Cir. 2001) (citing Restatement (Second) of Conflict of Laws § 148(2)).

The laws of Nebraska and Illinois both potentially govern this matter, and an actual conflict exists between Nebraska and Illinois law for claims of fraudulent inducement and negligent misrepresentation. Unlike Nebraska, Illinois allows recovery of punitive damages when "torts are committed with fraud. . . ." *Lowe Excavating Co. v. International Union of Operating Engineers Local No. 150*, 832 N.E.2d 495, 500 (Ill. App. Ct. 2005). *See Inacom*, 254 F.3d at 687-88 (applying choice of law principles to a fraud claim involving a conflict between Nebraska and Illinois law). Both parties agree that the laws of Nebraska govern Sacred Heart's tort claims, and based on the factors set forth in the Restatement, the Court agrees with the parties that Nebraska has the most significant relationship to the occurrence and parties in this matter. Therefore, the Court will apply Nebraska law to Sacred Heart's tort claims.

### Fraudulent Inducement and Negligent Misrepresentation

Under Nebraska law, "[t]he elements that must be alleged and proven to establish [fraudulent inducement based upon] fraudulent misrepresentation are (1) that a representation was made; (2) that the representation was false; (3) that when made, the

7

representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that it be relied upon; (5) that the alleging party reasonably did so rely; and (6) that the alleging party suffered damage as a result." *Precision Enterprises, Inc. v. Duffack Enterprises, Inc.*, 710 N.W.2d 348 (Neb. Ct. App. 2006) (citing *Cao v. Nguyen*, 607 N.W.2d 528 (2000)).

Nebraska has adopted the Restatement (Second) of Torts's definition of negligent misrepresentation as set forth in § 552. *Gibb v. Citicorp Mortg., Inc.*, 518 N.W.2d 910, 922 (Neb. 1994). Section 552 states in pertinent part:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1).

First, AHN argues that it is entitled to summary judgment on Sacred Heart's claims based on fraudulent inducement or negligent misrepresentation because no Sacred Heart representative or hostile witness was able to identify evidence showing that any AHN representatives made any statement that was false at the time the statement was made. (Support Brief at 17). On the other hand, Sacred Heart argues that the software AHN sold to Sacred Heart did not have the characteristics and functionality that AHN reported in the Response to the RFP and that the statements AHN made in the Response to the RFP were untrue at the time they were made. (8:04cv9, Filing No. 123 ("Opposition Brief") at 19-20; 4:04cv3210, Filing No. 69 ("Opposition Brief") at 19-20).

8

The Court finds that there are genuine issues of material fact precluding summary judgment on Sacred Heart's claims of fraudulent inducement and negligent misrepresentation.  AHN's claims that its statements in the Response to the RFP were based on AHN's Clarus product, which was then in the development stage.  Sacred Heart claims that AHN failed to indicate that its Response was based on a product that was not yet developed and available.  There are genuine issues of material fact regarding whether Sacred Heart knew or should have known that AHN's responses were not based on AHN's then-available product, Version 4.0.  Also, the Court finds that there are issues of material fact regarding whether the statements that AHN made regarding the functionality that its product could provide to Sacred Heart were false at the time they were made or whether the statements were made recklessly without knowledge of their truth.

Second, AHN argues that even if AHN misrepresented information to Sacred Heart, Sacred Heart's reliance on that information was not reasonable.  (Support Brief at 18).  Because there are issues of fact regarding whether Sacred Heart knew or should have known that the representations made by AHN in the Response to the RFP were based on Clarus and not Version 4.0, the Court finds that there are also issues of material fact regarding whether Sacred Heart's reliance on AHN's Response was reasonable.

Third, AHN argues that Sacred Heart failed to allege any damages arising out of AHN's alleged fraudulent inducement and negligent misrepresentation and that in order to maintain these causes of action, damages must result from the torts themselves.  (Support Brief at 20).  AHN further contends that all of the alleged damages result from AHN's performance under the Agreements, and not from any misrepresentations AHN made to Sacred Heart prior to entering into the Agreements.  (*Id.*).  On the other hand,

9

Sacred Heart claims that it may maintain both its contract and tort claims and that the damages Sacred Heart incurred were because "[s]ignificant 'must have' software deliverables were not implemented and not available on the Version 4.0 software program." (8:04cv9, Filing No. 118, Ex. L ("Busch Report")).  The Court finds that Sacred Heart has sufficiently alleged damages as a result of AHN's alleged false statements regarding the functionality of its available software.

Furthermore, in *Streeks, Inc. v. Diamond Hill Farms, Inc.*, 605 N.W.2d 110, 122 (Neb. 2000), the Nebraska Supreme Court stated that "a purchaser is not limited to the contract when bringing claims against a seller, but may also bring claims for fraudulent concealment, fraudulent misrepresentation, and negligence."  *See also Oriental Trading Co., Inc. v. Firetti,* 236 F.3d 938, 944 (8th Cir.2001) (stating "Nebraska does not restrict contracting parties or their associates to breach of contract actions." ). In *Gibb v. Citicorp Mortgage, Inc.*, 518 N.W.2d 910, 923 (Neb. 1994), the Nebraska Supreme Court determined that it was consistent for a plaintiff to pursue both a breach of contract claim and fraud and negligence-based claims when the plaintiff affirmed the contract, rather than seeking rescission of the contract.   In *Gibb*, the Court allowed the plaintiff to assert four separate theories of recovery based on the same set of facts on which recovery could be had.  *Id.*  The Court finds that Sacred Heart may maintain its fraudulent inducement and negligent misrepresentation claims in addition to its breach of contract claim.  *See also Accurate Communications, LLC v. Startel Corp.,* No. 4:05CV3286, 2006 WL 488717, at *1 (D. Neb. Feb. 28, 2006)

Finally, AHN argues that Sacred Heart's tort claims are actually breach of contract claims renamed and that the only duty AHN owed to Sacred Heart resulted from the Agreements.  (Support Brief at 22).  AHN cites *Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.*, 111 F.3d 1386 (8th Cir. 1997), a case interpreting Minnesota law, for the proposition that a plaintiff cannot maintain a fraud claim unless the plaintiff presents evidence that the defendant had a present intent not to perform its obligations under a contract at the time the defendant entered into a contract or knew its statements were false at the time the defendant entered into the contract.  In the present case, Sacred Heart alleges that AHN made statements in its Response to the RFP regarding its software's functionality that AHN knew to be false at the time the statements were made, and the Court determined above that there are material issues of fact regarding this issue. Therefore, the Court finds that Sacred Heart has sufficiently alleged separate causes of action for negligent misrepresentation and fraudulent inducement.

### *Deceptive Trade Practices*

AHN argues that Sacred Heart may not maintain its deceptive trade practices claim because Illinois law is inapplicable, and even if Illinois law were applicable, AHN is entitled to judgment as a matter of law.  (Support Brief at 23).  AHN correctly notes that the Illinois Uniform Deceptive Trade Practices Act "does not provide a cause of action for damages. *Greenberg v. United Airlines*, 206 Ill. App. 3d 40, 46 (Ill. App. Ct. 1990).  Additionally, the Illinois Supreme Court in *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 187 (2005), determined that a plaintiff may pursue a private cause of action under Illinois's Consumer Fraud and Deceptive Business Practices Act "if the circumstances that relate

to the disputed transaction occur primarily and substantially in Illinois." As noted in the choice-of-law discussion above, the Court agreed with the parties that Nebraska has the most significant relationship with the occurrence and parties in this action. Therefore, the Court grants AHN's Motion for Partial Summary Judgment with respect to Sacred Heart's deceptive trade practices claim under Illinois's Consumer Fraud and Deceptive Business Practices Act. As requested, the Court grants Sacred Heart leave to amend its Counterclaim to raise its deceptive trade practices claim under the Nebraska Consumer Protection Act.

### Breach of Contract and Unjust Enrichment

AHN argues that AHN's only duty to Sacred Heart was created by the Agreements, and therefore, Sacred Heart's breach of contract and unjust enrichment claims are limited by the terms of the Agreements and general contract laws. (Support Brief at 24-25). AHN also argues that "the parol evidence rule prevents Sacred heart from utilizing matters outside the four corners of the Agreements as a basis for establishing its claims for relief based upon the Agreements." (*Id.* at 25). AHN contends "all of Sacred Heart's claims based on AHN's alleged misrepresentations occurring before and contemporaneously with the execution of the Agreements fail, and AHN is entitled to summary judgment on such claims. (*Id.* at 25-26). On the other hand, Sacred Heart argues that the Response to RFP, which allegedly contains misrepresentations to the then-existing capability of AHN's software, is expressly incorporated into the License Agreement. (8:04cv9, Complaint, Ex. A ("Software License Agreement") ¶ 9.4). Paragraph 9.4 of the Software License Agreement states that the "Licensed Software shall provide functionality substantially equivalent to that indicated . . . in accordance with the RFP." (*Id.*). Sacred Heart further

12

argues that the representations in the Agreement are consistent with, not contradicted by, AHN's prior representations.  The Court above denied AHN's motion with respect to Sacred Heart's fraudulent inducement and negligent misrepresentation claims and the Agreements contain a provision which states the functionality of the software will be substantially equivalent to the information in the RFP; therefore, the Court denies AHN's motion with respect to the scope of Sacred Heart's breach of contract and unjust enrichment claims.

Finally, AHN argues that Sacred Heart's damages are limited by the terms of the Agreement.  (Support Brief at 26).  Paragraph 9.5 of the Addendum to the Software License Agreement contains the following provision:

> AHN shall have no liability or responsibility to Licensee with respect to any loss, damage or expense caused directly or indirectly by the use of the Licensed Software in the trade or business of Licensee.  AHN SHALL NOT BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY NATURE WITH RESPECT TO ANY LOSS, DAMAGE OR EXPENSE CAUSED EXCLUSIVELY BY LICENSEE NEGLIGENCE.  *AHN's sole liability for failure to provide functionality indicated in Section 9.4 shall be to modify the software at AHN's expense, to provide the represented functionality*.

(Software License Agreement Addendum ¶ 9.5 (emphasis added)).  Sacred heart argues that the provision purporting to limit AHN's liability is unenforceable under Nebraska law because it fails its essential purpose.  (Opposition Brief at 34-35).  The Court finds that there are material issues of fact precluding summary judgment on the issue of the whether the provision of the Agreement limiting Sacred Heart's recovery is enforceable.

For the reasons stated in this memorandum,

IT IS ORDERED

1        American Healthnet, Inc.'s Motion for Partial Summary Judgment (Case No.

         8:04cv9, Filing No. 116; Case No. 4:04cv3210, Filing No. 59) is denied; and

2.       Sacred Heart is granted leave to amend its Counterclaim to raise its

         Deceptive Trade Practices claim under the Nebraska Consumer Protection

         Act.

DATED this 3rd day of April, 2006.

                                            BY THE COURT:

                                            s/Laurie Smith Camp
                                            United States District Judge

14